**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**SOUTHEASTERN DIVISION**

| | | |
|---|---|---|
| PAULA STARNES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 1:06CV123 LMB |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

This is an action under 42 U.S.C. § 405(g) for judicial review of defendant's final decision

denying the application of Paula Starnes for Disability Insurance Benefits under Title II of the

Social Security Act, and Supplemental Security Income under Title XVI of the Act. This case has

been assigned to the undersigned United States Magistrate Judge pursuant to the Civil Justice

Reform Act and is being heard by consent of the parties. See 28 U.S.C. § 636(c). Plaintiff has

filed a Brief in Support of Plaintiff's Complaint. (Document Number 15). Defendant has filed a

Brief in Support of the Answer. (Doc. No. 18).

## Procedural History

On February 19, 2004, plaintiff filed her application for benefits, claiming that she became

unable to work due to her disabling condition on February 15, 2004. (Tr. 48-49). On April 12,

2005, after plaintiff waived her right to an administrative hearing, an administrative law judge

(ALJ) rendered a decision in which he denied plaintiff's claim. (Tr. 164-69). On August 25,

2005, the Appeals Council of the Social Security Administration remanded plaintiff's case to an

ALJ so that an administrative hearing could be conducted, at the request of plaintiff's counsel. (Tr. 23-24, 179-82). An administrative hearing was held on November 17, 2005. (Tr. 238-55). On December 29, 2005, the ALJ rendered a decision in which he denied plaintiff's claim. (Tr. 12-16). Plaintiff then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on August 23, 2006. (Tr. 8, 4-6). Thus, the second decision of the ALJ stands as the final decision of the Commissioner. See 20 C.F.R. §§ 404.981, 416.1481.

## Evidence Before the ALJ

### A.    ALJ Hearing

Plaintiff's administrative hearing was held on November 17, 2005. (Tr. 240). Plaintiff was present and was represented by counsel. (Id.). The ALJ began the hearing by admitting a number of exhibits into the record. (Id.).

Plaintiff's attorney then examined plaintiff, who testified that she was 32 years of age and lived in Sikeston, Missouri. (Tr. 241). Plaintiff stated that she has lived in Sikeston all her life. (Id.). Plaintiff testified that she lives with her three children, who are 12, 8, and 6. (Id.).

Plaintiff stated that she filed a claim for disability because she broke her back in an automobile accident on February 15, 2004. (Id.). Plaintiff testified that she worked up until February 15, 2004. (Tr. 242).

Plaintiff stated that she worked for VNA providing in-home care for residents prior to the automobile accident. (Id.). Plaintiff testified that she worked for VNA for nine or ten months. (Id.). Plaintiff stated that she had also performed this type of work for Clearview and Tri-County. (Id.). Plaintiff testified that she worked as a home care provider for about two years at each job.

(Id.).  Plaintiff stated that at this position, she washed residents, dressed residents, fed residents, cooked meals for residents, and ran errands for residents.  (Id.).  Plaintiff testified that she was required to lift residents, who weighed up to 200 pounds.  (Id.).  Plaintiff stated that she lifted residents every day.  (Tr. 243).

Plaintiff testified that she has also worked at restaurants.  (Id.).  Plaintiff stated that she worked at Shoney's in 1997.  (Id.).  Plaintiff testified that she also worked as a cook at Ryan's in September of 2003.  (Id.).

Plaintiff stated that she has lower back pain that shoots from the middle of her back to the side at her hips.  (Id.).  Plaintiff testified that she also has numbness in her feet.  (Id.).  Plaintiff stated that she experiences the numbness in her feet about every other day or so.  (Tr. 244). Plaintiff testified that she has numbness in her feet after walking about a block.  (Id.).  Plaintiff stated that the numbness comes and goes.  (Id.).  Plaintiff described the numbness as a painful tingling sensation in the bottom of her feet when she walks.  (Id.).  Plaintiff testified that she often experiences back pain that shoots down to her hip and her leg.  (Id.).  Plaintiff stated that she continuously experiences back pain and the pain occasionally shoots down to her leg.  (Id.).

Plaintiff testified that she is seeing Bill Bradley, who is a nurse practitioner.  (Id.).  Plaintiff stated that she has been seeing Mr. Bradley for checkups and she has called him and talked to him about her back pain.  (Tr. 245).

Plaintiff testified that she takes Tramadol[1] for pain, which is a generic form of Ultram.  (Id.).  Plaintiff stated that she takes Tramadol twice daily, once in the morning and once at night.

---

[1]Tramadol, or Ultram, is indicated for the management of moderate to moderately severe pain in adults.  See Physician's Desk Reference (PDR), 2393 (61st Ed. 2007).

(Id.).  Plaintiff testified that she also takes Cymbalta,[2] which was prescribed for her depression.  (Tr. 246).  Plaintiff stated that she takes Skelaxin,[3] a muscle relaxer, when her muscles tighten.  (Id.).  Plaintiff testified that she takes Skelaxin once a day.  (Id.).

Plaintiff stated that she has also been experiencing headaches since her automobile accident.  (Id.).  Plaintiff testified that she has gone to the Sikeston hospital for her headaches, and that she was referred to a neurologist in St. Louis.  (Tr. 247).  Plaintiff stated that the neurologist diagnosed her with migraines.  (Id.).  Plaintiff testified that the neurologist prescribed Imitrex[4] and Elavil[5] for her migraines.  (Id.).  Plaintiff stated that she takes the Imitrex at the onset of a migraine and she takes the Elavil at night to help her relax.  (Id.).

Plaintiff testified that she has migraines every day.  (Tr. 248).  Plaintiff stated that she wakes up with a migraine and takes her medication to stop the pain.  (Id.).  Plaintiff testified that the migraines cause pain in her temples and at the top of her head.  (Id.).  Plaintiff stated that the migraines also bother her eyes.  (Id.).  Plaintiff testified that the migraines she experiences in the morning last about twenty minutes after she takes her medication.  (Id.).  Plaintiff stated that the Imitrex stops the pain right away.  (Id.).  Plaintiff testified that she has more migraines if she does not take her medication.  (Id.).

Plaintiff stated that on a typical day, she wakes up and gets her kids ready for school.  (Tr.

---

[2]Cymbalta is indicated for the treatment of major depressive disorder.  See PDR at 1758.

[3]Skelaxin is indicated for the relief of acute, painful musculoskeletal conditions.  See PDR at 1717.

[4]Imitrex is indicated for the acute treatment of migraine attacks.  See PDR at 1472.

[5]Elavil is an antidepressant indicated for the treatment of depression.  See PDR at 2146.

249). Plaintiff testified that getting her kids ready for school causes her back and head to hurt. (Id.). Plaintiff stated that her oldest child helps her with her younger children. (Id.). Plaintiff testified that she can wash dishes but she can only stand for fifteen to twenty minutes due to a shooting pain she experiences in her back. (Id.). Plaintiff stated that she has to sit down and relax for a few minutes until the pain goes away. (Id.).

The ALJ asked plaintiff how many kids she has. (Id.). Plaintiff responded that she has three children. (Id.).

Plaintiff's attorney then resumed questioning plaintiff, who testified that she cooks three to four days a week. (Id.). Plaintiff stated that it takes her no more than thirty minutes to cook a meal. (Id.). Plaintiff testified that she shops. (Id.). Plaintiff stated that shopping occasionally causes her problems if she is on her feet for a prolonged period. (Tr. 250). Plaintiff testified that she can stand for about thirty minutes. (Id.). Plaintiff stated that she has a driver's license and a car. (Id.). Plaintiff testified that she did not drive to the hearing because her car needs brakes. (Id.). Plaintiff stated that she places a pillow behind her back for support when she drives. (Id.).

Plaintiff testified that she spoke to the neurologist about her back. (Id.). Plaintiff stated that the neurologist told her that he would have to see her records and he has not had a chance to do so. (Id.). Plaintiff testified that she has undergone an MRI of her head that the neurologist reviewed. (Tr. 251). Plaintiff stated that she has not undergone an MRI of her back and she has not seen a specialist for her back. (Id.). Plaintiff testified that she receives Medicaid benefits. (Id.). Plaintiff stated that her back has stayed the same in severity since the automobile accident. (Id.). Plaintiff testified that she never went back to work after injuring her back. (Id.).

Plaintiff stated that she went to school until the ninth grade in Sikeston. (Id.). Plaintiff

testified that she left school in the ninth grade because she was kicked out of school at that time. (Id.). Plaintiff stated that she had problems with students that would pick on her. (Tr. 252). Plaintiff testified that she also had problems with teachers who she believed showed favoritism towards certain children. (Id.). Plaintiff stated that she took all special education classes. (Id.).

Plaintiff testified that she is able to handle her own finances, count money, and make change. (Id.). Plaintiff stated that she can read and write and that she does not have any problems reading. (Id.). Plaintiff testified that she often reads books, newspapers, and magazines. (Id.).

Plaintiff stated that she was shot in the abdomen when she was sixteen years of age. (Tr. 253). Plaintiff testified that, as a result, she experiences sharp pains in the wounds in her stomach. (Id.). Plaintiff stated that she has been experiencing these pains in her stomach since she sustained the gunshot wound. (Id.). Plaintiff testified that she does not see a doctor for the stomach pain. (Id.). Plaintiff stated that she does not take any medication for the stomach pain. (Id.). Plaintiff testified that she used to take medication for ulcers, but she did not believe that the ulcers were related to the gunshot wound. (Tr. 254).

**B.    Relevant Medical Records**

The record reveals that plaintiff presented to St. Francis Medical Center via ambulance on February 15, 2004, after being involved in an automobile accident in which plaintiff was the unrestrained driver and her car was struck on the driver's side at highway speeds. (Tr. 144, 160). Plaintiff had no loss of consciousness and was stable en route to the hospital. (Tr. 144). Plaintiff complained of severe pain in the left hip/flank/buttock region, although work-up came back

negative.  (Id.).  No evidence of fracture, lumbar[6] injury, or rib fracture was found.  (Id.).  The

impression of the treating physician was motor vehicle accident with severe muscle spasm pain

and significant mechanism injury.  (Id.).  Plaintiff was admitted for testing and pain control.  (Id.).

Plaintiff underwent x-rays of the cervical spine on February 15, 2004, which revealed no

acute localized traumatic injury.  (Tr. 152).  X-rays of the thoracic spine revealed no compression

deformity or obvious traumatic bony injury.  (Tr. 153).  X-rays of the pelvis revealed no fractures

and no traumatic bony injury.  (Tr. 154).  X-rays of the chest were negative.  (Tr. 156).  X-rays of

the lumbosacral spine were negative.  (Tr. 157).  Plaintiff underwent a CT scan of the head, which

revealed no intracranial injury.  (Tr. 155).  A CT scan of the abdomen and pelvis revealed no

visceral[7] injury and nondisplaced fractures transverse processes at L2 and L3.  (Tr. 158).  A CT

scan of the cervical spine revealed no fracture.  (Tr. 159).

Plaintiff presented to Grant L. McClune, M.D. of the Cape Girardeau Surgical Clinic, Inc.,

on February 25, 2004.  (Tr. 144).  Dr. McClune prescribed physical therapy three times a week

for a month, tub soaks, and Ibuprofen.  (Tr. 144).  Dr. McClune found no loss of sensation or

evidence of any nerve compression problems.  (Id.).

Plaintiff participated in physical therapy from March 4, 2004, to March 23, 2004.  (Tr.

131-40).

---

[6]The back is comprised of the cervical, thoracic and lumbar regions.  In common terms, the cervical region of the spinal column is the neck; the thoracic region is the main part of the back; and the lumbar region is the lower back.  There are seven cervical vertebrae, twelve thoracic vertebrae, and five lumbar vertebrae.  The sacrum lies directly below the fifth lumbar vertebra.  The coccyx, or tail bone, lies below the sacrum.  See J. Stanley McQuade, Medical Information Systems for Lawyers, § 6:27 (1993).

[7]An organ of the digestive, respiratory, urogenital, and endocrine systems as well as the spleen, the heart, and great vessels.  Stedman's Medical Dictionary, 2136 (28th Ed. 2006).

On March 29, 2004, plaintiff presented to Sikeston Urgent Care with complaints of a skin rash. (Tr. 193). No other complaints or abnormalities were noted. (Id.). On April 2, 2004, plaintiff presented to Sikeston Urgent Care for a follow-up of her skin rash. (Tr. 194). Plaintiff was found to have a mild skin rash and was in no acute distress. (Id.).

Plaintiff presented to Sikeston Urgent Care on April 9, 2004, with complaints of vaginal discharge and itching. (Tr. 195). A pap smear was performed, which was negative. (Tr. 195, 210). Laboratory testing revealed a bacterial infection. (Tr. 209). Plaintiff presented for a follow-up of a gynecological infection on April 20, 2004. (Tr. 196). Plaintiff continued to complain of vaginal symptoms on June 21, 2004. (Tr. 199). Plaintiff reported that she had not taken the full dosage of medication for her vaginal infection. (Id.). Plaintiff complained of vaginal itching again on June 28, 2004. (Tr. 200).

Plaintiff underwent a CT scan of the brain on May 9, 2004, due to complaints of headache pain. (Tr. 231). The CT scan was normal. (Id.).

Plaintiff presented to Sikeston Urgent Care on July 27, 2004, with complaints of headaches that occur daily. (Tr. 201). Plaintiff was found to be in no acute distress. (Id.).

On September 22, 2004, plaintiff presented to Sikeston Urgent Care with complaints of headaches. (Tr. 202). Plaintiff indicated that the headaches feel as if her head is going numb. (Id.). It was noted that plaintiff was seen in the emergency room at Missouri Delta Hospital on that date. (Id.).

Plaintiff presented to Sikeston Urgent Care on October 12, 2004, with complaints of sinus drainage, congestion, and low back pain. (Tr. 203).

Plaintiff complained of vaginal discharge on October 25, 2004. (Tr. 204).

Plaintiff underwent a pelvic sonogram on November 2, 2004, due to complaints of pelvic pain. (Tr. 233). No abnormalities were found. (Id.).

Plaintiff underwent an MRI of the brain on December 4, 2004, which was normal. (Tr. 232).

Plaintiff underwent an MRI of the lumbar spine on December 7, 2004, which revealed mild lumbar spondylosis;[8] tiny disk bulges at L3-4 and L4-5 causing minimal bilateral foraminal narrowing, but no central stenosis;[9] and a small disk bulge at L5-S1 causing mild-to-moderate right and mild left femoral[10] narrowing, but no central stenosis. (Tr. 236).

## The ALJ's Determination

The ALJ made the following findings:

1.    The claimant met the disability insured status requirements of the Social Security Act on February 15, 2004, the date the claimant stated that she became unable to work, and continues to meet them through September 30, 2008.

2.    The claimant has not engaged in substantial gainful activity since February 15, 2004.

3.    The medical evidence establishes that the claimant has bulging discs of the lumbar spine, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4.    Although the claimant has some back pain and headaches, the claimant's allegations of disabling pain are not credible for the reasons enumerated in the

---

[8]Stiffening of the vertebra; often applied nonspecifically to any lesion of the spine of a degenerative nature. Stedman's at 1813.

[9]Narrowing of the spinal canal. See Stedman's at 1832.

[10]Relating to the femur, which is the long bone of the thigh, articulating with the hip bone. See Stedman's at 709.

decision.

5.      The claimant has the residual functional capacity to perform the physical exertion requirements of work except for prolonged walking or standing and lifting in excess of ten pounds. There are no non-exertional limitations.

6.      The claimant is unable to perform her past relevant work as a certified nurse's aide, home health care worker, and cook.

7.      The claimant has the residual functional capacity to perform the full range of sedentary work.

8.      The claimant is 32 years old, which is defined as a younger age individual.

9.      The claimant has attained a limited 9th grade education.

10.     The claimant does not have an acquired work skills which are transferable to the skilled or semi-skilled work functions of sedentary work (20 CFR 404.1568 and 416.968).

11.     Based on the exertional capacity for sedentary work, and the claimant's age, education, and work experience, Section 404.1569 of Regulations No. 4 and Section 416.969 of Regulations No. 16 and Rules 201.24 and 201.25, Table No. 1, Appendix 2, Subpart P, Regulations No. 4 directs a conclusion of "not disabled."

12.     The claimant was not under a "disability" as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520 and 416.920).

(Tr. 15-16).

The ALJ's final decision reads as follows:

It is the decision of the Administrative Law Judge that, based upon the applications filed on February 19, 2004, the claimant is not entitled to a Period of Disability, Disability Insurance Benefits, under Sections 216(i), 223, respectively, of the Social Security Act and is not eligible for Supplemental Security Income under Sections 1602 and 1614(a)(3)(A) of the Act.

(Tr. 16).

**Discussion**

**A.      Standard of Review**

Judicial review of a decision to deny Social Security benefits is limited and deferential to

the agency.  See Ostronski v. Chater, 94 F.3d 413, 416 (8th Cir. 1996).  The decision of the SSA

will be affirmed if substantial evidence in the record as a whole supports it.  See Roberts v. Apfel,

222 F.3d 466, 468 (8th Cir. 2000).  Substantial evidence is less than a preponderance, but enough

that a reasonable mind might accept it as adequate to support a conclusion.  See Kelley v.

Callahan, 133 F.3d 583, 587 (8th Cir. 1998).  If, after review, it is possible to draw two

inconsistent positions from the evidence and one of those positions represents the Commissioner's

findings, the denial of benefits must be upheld.  See Robinson v. Sullivan, 956 F.2d 836, 838 (8th

Cir. 1992).  The reviewing court, however, must consider both evidence that supports and

evidence that detracts from the Commissioner's decision.  See Johnson v. Chater, 87 F.3d 1015,

1017 (8th Cir. 1996).  "[T]he court must also take into consideration the weight of the evidence

in the record and apply a balancing test to evidence which is contrary."  Burress v. Apfel, 141

F.3d 875, 878 (8th Cir. 1998).  The analysis required has been described as a "searching inquiry."

Id.

**B.      The Determination of Disability**

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment which can

be expected to result in death or has lasted or can be expected to last for a continuous period of

not less than 12 months."  42 U.S.C. § 416 (I) (1) (a); 42 U.S.C. § 423 (d) (1) (a).  The claimant

has the burden of proving that s/he has a disabling impairment.  See Ingram v. Chater, 107 F.3d

- 11 -

598, 601 (8th Cir. 1997).

The SSA Commissioner has established a five-step process for determining whether a person is disabled.  See 20 C.F.R. §§ 404.1520, 416.920; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 141-42, 107 S. Ct. 2287, 2291, 96 L. Ed. 2d. 119 (1987); <u>Fines v. Apfel</u>, 149 F.3d 893, 894-895 (8th Cir. 1998).  First, it is determined whether the claimant is currently engaged in "substantial gainful employment."  If the claimant is, disability benefits must be denied. <u>See</u> 20 C.F.R. §§ 404.1520, 416.920 (b).  Step two requires a determination of whether the claimant suffers from a medically severe impairment or combination of impairments. <u>See</u> 20 C.F.R §§ 404.1520 (c), 416.920 (c).  To qualify as severe, the impairment must significantly limit the claimant's mental or physical ability to do "basic work activities."  <u>Id.</u>  Age, education and work experience of a claimant are not considered in making the "severity" determination.  <u>See</u> <u>id.</u>

If the impairment is severe, the next issue is whether the impairment is equivalent to one of the listed impairments that the Commissioner accepts as sufficiently severe to preclude substantial gainful employment.  <u>See</u> 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  This listing is found in Appendix One to 20 C.F.R. 404.  20 C.F.R. pt. 404, subpt. P, App. 1.  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be impaired.  <u>See</u> 20 C.F.R. §§ 404.1520 (d), 416.920 (d).  If it does not, however, the evaluation proceeds to the next step which inquires into whether the impairment prevents the claimant from performing his or her past work.  <u>See</u> 20 C.F.R. § 404.1520 (e), 416.920 (e).  If the claimant is able to perform the previous work, in consideration of the claimant's residual functional capacity (RFC) and the physical and mental demands of the past work, the claimant is not disabled.  <u>See</u> <u>id.</u>  If the

claimant cannot perform his or her previous work, the final step involves a determination of whether the claimant is able to perform other work in the national economy taking into consideration the claimant's residual functional capacity, age, education and work experience. See 20 C.F.R. §§ 404.1520 (f), 416.920 (f). The claimant is entitled to disability benefits only if s/he is not able to perform any other work. See id. Throughout this process, the burden remains upon the claimant until s/he adequately demonstrates an inability to perform previous work, at which time the burden shifts to the Commissioner to demonstrate the claimant's ability to perform other work. See Beckley v. Apfel, 152 F.3d 1056, 1059 (8th Cir. 1998).

The Commissioner has supplemented this five-step process for the evaluation of claimants with mental impairments. See 20 C.F.R. §§ 404.1520a (a), 416.920a (a). A special procedure must be followed at each level of administrative review. See id. Previously, a standard document entitled "Psychiatric Review Technique Form" (PRTF), which documented application of this special procedure, had to be completed at each level and a copy had to be attached to the ALJ's decision, although this is no longer required. See 20 C.F.R. §§ 404.1520a (d), (d) (2), (e), 416.920a (d), (d) (2), (e); 65 F.R. 50746, 50758. Application of the special procedures required is now documented in the decision of the ALJ or Appeals Council. See 20 C.F.R. §§ 404.1520a (e), 416.920a (e).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. See 20 C.F.R. §§ 404.1520a (b) (1), 416.920a (b) (1). If it is determined that a mental impairment exists, the Commissioner must

indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a (b) (2), 416.920a (b) (2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. See 20 C.F.R. §§ 404.1520a (b) (3), 416.920a (b) (3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. See id. Next, the Commissioner must determine the severity of the impairment based on those ratings. See 20 C.F.R. §§ 404.1520a (c), 416.920a (c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. See 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. See id. If there is a severe impairment but the impairment does not meet or equal the listings, then the Commissioner must prepare a residual functional capacity assessment. See 20 C.F.R. §§ 404.1520a (c)(3), 416.920a (c)(3).

**C.  Plaintiff's Claims**

Plaintiff argues that the ALJ failed to consider plaintiff's non-exertional impairments when determining plaintiff's residual functional capacity. Plaintiff also argues that the ALJ improperly applied the Medical-Vocational Guidelines, or "Grids." Although plaintiff does not specifically challenge the ALJ's credibility analysis, it will be considered as it relates to the ALJ's residual functional capacity determination.

**1.  Credibility Analysis**

"While the claimant has the burden of proving that the disability results from a medically

- 14 -

determinable physical or mental impairment, direct medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced." Polaski v. Hecker, 739 F.2d 1320, 1322 (8th Cir. 1984) (quoting settlement agreement between Department of Justice and class action plaintiffs who alleged that the Secretary of Health and Human Services unlawfully required objective medical evidence to fully corroborate subjective complaints). Although an ALJ may reject a claimant's subjective allegations of pain and limitation, in doing so the ALJ "must make an express credibility determination detailing reasons for discrediting the testimony, must set forth the inconsistencies, and must discuss the Polaski factors." Kelley, 133 F.3d at 588. Polaski requires the consideration of: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) aggravating and precipitating factors; (4) dosage, effectiveness and side effects of the medication; and (5) functional restrictions. Polaski, 739 F.2d at 1322. See Burress, 141 F.3d at 880; 20 C.F.R. § 416.929.

The undersigned finds that the ALJ's credibility determination regarding plaintiff's subjective complaints of pain and limitations is supported by substantial evidence in the record as a whole. The primary question is not whether plaintiff suffers from the impairments alleged; it is whether plaintiff is fully credible when she claims that the symptoms prevent her from engaging in her prior work. See Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987). Thus, the relevant inquiry is whether or not plaintiff's complaints of limitations to a degree of severity to prevent her from working are credible.

In his opinion, the ALJ pointed out Polaski factors and other inconsistencies in the record as a whole that detract from plaintiff's complaints of disabling impairments. (Tr. 14-15). The

ALJ first discussed the medical evidence. (Tr. 13-14). The ALJ found that the medical evidence

does not support plaintiff's allegations of disability. (Id.). Although the ALJ may not discount

subjective complaints solely because they are not fully supported by the objective medical

evidence, the lack of supporting objective medical evidence may be considered as a factor in

evaluating the claimant's credibility. See Curran-Kicksey v. Barnhart, 315 F.3d 964, 968 (8th Cir.

2003).

With regard to plaintiff's back impairment, the ALJ noted that immediately following her

automobile accident, a CT scan of the abdomen and pelvis revealed nondisplaced fractures of the

transverse processes at L2 and L3, while all other x-rays and CT scans revealed no abnormalities.

(Tr. 13, 152-59). On February 25, 2004, Dr. McClune found no loss of sensation or evidence of

nerve root compression. (Tr. 13, 144). Although plaintiff sought treatment at Sikeston Urgent

Care from March 29, 2004, through October 25, 2004 for various complaints including

gynecological symptoms, rash, and headaches, she did not seek treatment for back pain until

October 12, 2004. (Tr. 203). Failure to seek medical treatment may be inconsistent with a

finding of disability and can be considered in assessing a claimant's credibility. See Shannon v.

Chater, 54 F.3d 484, 486 (8th Cir. 1995). Plaintiff underwent an MRI of the lumbar spine on

December 7, 2004, which revealed mild lumbar spondylosis; tiny disk bulges at L3-4 and L4-5

causing minimal bilateral foraminal narrowing, but no central stenosis; and a small disk bulge at

L5-S1 causing mild-to-moderate right and mild left femoral narrowing, but no central stenosis.

(Tr. 236).

The ALJ noted that no doctor who has examined plaintiff has expressed the opinion that

plaintiff is unable to work or that she has work-related restrictions due to her back impairment.

(Tr. 14).  The presence or absence of functional limitations is an appropriate <u>Polaski</u> factor, and "[t]he lack of physical restrictions militates against a finding of total disability." <u>Hutton v. Apfel</u>, 175 F.3d 651, 655 (8th Cir. 1999) (citing <u>Smith v. Shalala</u>, 987 F.2d 1371, 1374 (8th Cir. 1993)). The ALJ also pointed out that there is no medical evidence of any nerve root impingement or motor, sensory, or neurological deficits.  (<u>Id.</u>).

With regard to plaintiff's headaches, the ALJ acknowledged that plaintiff complained of headaches on May 5, 2004, July 27, 2004, and on September 22, 2004.  (Tr. 13, 231, 201, 202). The ALJ noted, however, that a CT scan of the brain on May 9, 2004, was normal.  (Tr. 231). Further, plaintiff underwent an MRI of the brain on December 4, 2004, which was also normal. (Tr. 232).  The ALJ pointed out that no physician has reported that plaintiff has headaches of such severity, frequency, and intensity to preclude work activity.  (Tr. 14).

The ALJ next discussed plaintiff's work record.  The ALJ stated that plaintiff does not have a good earnings record.  (Tr. 15).  Specifically, plaintiff has earned more than $6,000 in only three years.  (<u>Id.</u>).  Although not controlling on the issue of plaintiff's complaints of disabling pain, a claimant's work history is a proper factor in assessing credibility.  <u>See</u> <u>Brown v. Chater</u>, 87 F.3d 963, 965 (8th Cir. 1996).  A poor work history prior to the alleged onset of disability lessens the credibility of a plaintiff's allegations of disabling pain.  <u>See</u> <u>Woolf v. Shalala</u>, 3 F.3d 1210, 1214 (8th Cir. 1993).

The ALJ next discussed plaintiff's daily activities.  (Tr. 15).  The ALJ stated that despite her complaints of disabling pain, she is taking care of three children, shops, cooks, drives, reads, and performs household chores.  (<u>Id.</u>).  Significant daily activities may be inconsistent with claims of disabling pain.  <u>See</u> <u>Haley v. Massanari</u>, 258 F.3d 742, 748 (8th Cir. 2001).

Finally, the ALJ discussed plaintiff's medications. (Tr. 15). The ALJ noted that plaintiff's medications do not cause any adverse side effects. (Id.). The absence of side effects from medication is a proper factor to be considered in evaluating subjective complaints of pain. See McKinney v. Apfel, 228 F.3d 860, 864 (8th Cir. 2000). Further, plaintiff reported that the medication she takes for her migraines causes the pain to stop within twenty minutes. (Tr. 248). Evidence of effective medication resulting in relief may diminish the credibility of a claimant's complaints. See Rose v. Apfel, 181 F.3d 943, 944 (8th Cir. 1999). The ALJ also noted that plaintiff has never been admitted to a pain clinic or undergone pain relief injections. (Tr. 15).

An administrative opinion must establish that the ALJ considered the appropriate factors. See Holley v. Massanari, 253 F.3d 1088, 1092 (8th Cir. 2001). Each and every Polaski factor, however, need not be discussed in depth, so long as the ALJ points to the relevant factors and gives good reasons for discrediting a claimant's complaints. See Dunahoo v. Apfel, 241 F.3d 1033, 1038 (8th Cir. 2001). In this case, the reasons given above by the ALJ for discrediting plaintiff's complaints of a disabling impairment are sufficient and his finding that plaintiff's complaints are not entirely credible is supported by substantial evidence

**2.    Residual Functional Capacity**

Plaintiff argues that the ALJ erred in formulating her residual functional capacity. Specifically, plaintiff contends that the ALJ failed to consider her pain, migraines, depression, and limited intellectual ability. Defendant argues that the ALJ properly formulated plaintiff's residual functional capacity.

The ALJ made the following determination regarding plaintiff's residual functional capacity:

> After considering the entire record and giving claimant the benefit of doubt, the undersigned find that, as a result of her impairments, claimant has the residual functional capacity to perform a full range of sedentary work, including the ability to lift and carry up to 10 pounds, stand and/or walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour workday.

(Tr. 34-35).

Determination of residual functional capacity is a medical question and at least "some medical evidence 'must support the determination of the claimant's [residual functional capacity] and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace.'" Hutsell v. Massanari, 259 F.3d 707, 712 (8th Cir. 2001) (quoting Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001)).  Further, determination of residual functional capacity is "based on all the evidence in the record, including 'the medical records, observations of treating physicians and others, and an individual's own description of his limitations.'" Krogmeier v. Barnhart, 294 F.3d 1019, 1024 (8th Cir. 2002) (quoting McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000)).

As noted above, plaintiff argues that the ALJ failed to consider her pain, migraines, depression, and limited intellectual ability in assessing her residual functional capacity.  With regard to plaintiff's pain, the ALJ took into account the pain plaintiff experiences as a result of her back impairment when formulating her residual functional capacity.  The ALJ performed a proper credibility analysis, as discussed above, and found that plaintiff's complaints of disabling pain were not credible.  The ALJ, however, acknowledged that plaintiff suffers some pain as a result of her back impairment and stated that plaintiff's pain is precipitated and aggravated by work activity requiring exertion beyond the sedentary level.  (Tr. 15).  The ALJ thus found that, due to plaintiff's back impairment and the pain it produces, she is only able to perform sedentary work.

(Id.).  As such, plaintiff's argument that the ALJ failed to consider her pain is without merit.

With regard to plaintiff's migraines, although plaintiff testified that she experiences migraines every morning when she wakes up, she testified that the migraines are resolved within twenty minutes after taking her medication.  (Tr. 248).  As such, plaintiff does not have any functional limitations resulting from her migraines.

Although plaintiff argues that she suffers from depression, the record does not support the presence of this impairment.  Plaintiff did not allege this impairment in her application for benefits.  Plaintiff testified at the hearing that she took an anti-depressant.  (Tr. 246).  This is the only evidence of depression in the record.  There is no evidence that plaintiff was treated for depression in the objective medical record.  "The mere fact that [plaintiff] has been prescribed antidepressants on at least one occasion is not enough to require the ALJ to inquire further into the condition by ordering a psychological evaluation."  Hensley v. Barnhart, 352 F.3d 353, 357 (8th Cir. 2003).  Thus, the ALJ did not err in failing to consider plaintiff's alleged depression when formulating her residual functional capacity.

Finally, plaintiff contends that the ALJ erred in failing to consider her limited intellectual ability.  It is true that plaintiff only attended school until the ninth grade.  Although plaintiff testified that she took special education classes, plaintiff's transcript does not indicate that she was enrolled in special education classes.  (Tr. 84).  Plaintiff testified that she was kicked out of school in the ninth grade due to behavioral problems.  (Tr. 251).  Other than plaintiff's testimony regarding her limited education, there is no evidence that plaintiff suffered from a cognitive impairment.  In fact, plaintiff testified that she is able to read and write, handle her own finances, cunt money, and make change.  (Tr. 252).  Plaintiff also testified that she enjoys reading books,

- 20 -

newspapers, and magazines. (Id.). Thus, the evidence of record does not support the presence of a cognitive impairment.

The undersigned finds that the ALJ's residual functional capacity determination is supported by substantial evidence in the record as a whole. As discussed above, the record does not support the presence of a disabling back impairment. Rather, the record is consistent with the ability to perform sedentary work. The record is not supportive of any greater restriction due to plaintiff's impairments. Further, the record does not support the presence of any non-exertional impairments.

**3.      Lack of Vocational Expert Testimony**

Plaintiff argues that the ALJ erred by using the Medical-Vocational Guidelines instead of obtaining vocational expert testimony because the ALJ failed to properly consider plaintiff's non-exertional impairments. Plaintiff contends that the ALJ's use of the Medical-Vocational Guidelines, commonly known as the "Grids," to determine that plaintiff was capable of performing other work, was error. Plaintiff argues that once a non-exertional impairment such as pain is shown to exist, vocational expert testimony is required. Plaintiff asserts that the ALJ's failure to obtain vocational expert testimony in this case was error.

As set forth above, once a claimant establishes that he or she is unable to return to past relevant work, the final step in the sequential process requires a determination of whether a claimant can perform other work in the national economy. The Commissioner may rely on the Medical-Vocational Guidelines to show the availability of work in certain limited circumstances. See Gray v. Apfel, 192 F.3d 799, 802 (8th Cir. 1999). "If an applicant's impairments are exertional, (affecting the ability to perform physical labor), the Commissioner may carry this

burden by referring to the Medical-Vocational Guidelines or 'Grids,' which are fact-based generalization[s] about the availability of jobs for people of varying ages, educational backgrounds, and previous work experience, with differing degrees of exertional impairment." Id. (quotation omitted). Use of the guidelines is permissible only if the claimant's characteristics identically match those contained in grids and only if the claimant does not have non-exertional impairments. See Foreman v. Callahan, 122 F.3d 24, 25 (8th Cir. 1997).

As explained by the Eighth Circuit, "[t]he grids [] do not accurately reflect the availability of jobs to people whose impairments are non-exertional, and who therefore cannot perform the full range of work contemplated within each table." Id. at 26. Accordingly, the Eighth Circuit requires "the Commissioner [to] meet his burden of proving that jobs are available for a significantly nonexertionally impaired applicant by adducing the testimony of a vocational expert." Id. "[W]here a claimant suffers from a non-exertional impairment which substantially limits his ability to perform gainful activity, the grid cannot take the place of expert vocational testimony." Id. (alteration in original)(quoting Talbott v. Bowen, 821 F.2d 511, 515 (8th Cir. 1987)). "Thus, if a claimant's ability to perform the full range of work in a particular category is limited by a nonexertional impairment, the ALJ cannot rely exclusively on the grids to determine disability but must consider vocational expert testimony." Beckley, 152 F.3d at 1059 (citing Frankl v. Shalala, 47 F.3d 935, 937 (8th Cir. 1995)).

Here, the ALJ's use of the grids was permissible given that there was no credible evidence of any non-exertional impairments suffered by plaintiff. Rather, the ALJ determined that plaintiff possessed the residual functional capacity to perform the full range of sedentary work. Because there was no credible evidence of non-exertional impairments, the ALJ's use of the Medical-

Vocational Guidelines to find plaintiff not disabled was not error.

## Conclusion

Substantial evidence in the record as a whole supports the decision of the ALJ finding plaintiff not disabled because the evidence of record does not support the presence of a disabling impairment. Accordingly, Judgment will be entered separately in favor of defendant in accordance with this Memorandum.

Dated this __26th__ day of September, 2007.

_Lewis M. Blanton_
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE